

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00172-CR

---

**JEREMIAH NTIRAMPEBA, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

---

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 082500-D-CR, Honorable Steven Denny, Presiding

---

July 15, 2026

## MEMORANDUM OPINION

Before DOSS and YARBROUGH and PRATT, JJ.

Appellant, Jeremiah Ntirampeba, appeals from a judgment convicting him of murder, a first-degree felony, in the shooting death of Chris Doerue.[1]  A Potter County jury returned the guilty verdict but deadlocked at punishment.  The trial court declared a mistrial as to punishment only, and a second jury assessed a sentence of forty-five years of confinement and a $10,000 fine.  Appellant raises four issues, contending the trial court

---

[1] *See* TEX. PENAL CODE § 19.02(b)(1), (c).

erred by (1) denying his request for a lesser-included-offense instruction on manslaughter; (2) refusing to grant a mistrial as to guilt-innocence based on alleged juror misconduct; (3) allowing his motion for new trial to be overruled by operation of law; and (4) declining to hold a hearing on that motion. We affirm.

**BACKGROUND**

Appellant does not challenge the sufficiency of the evidence. We recite only those facts necessary to dispose of the issues presented. *See* TEX. R. APP. P. 47.1.

On May 8, 2022, Mother's Day, the Doerue family and guests gathered in Amarillo, Texas, to celebrate the expected child of one of the Doerue children. Appellant arrived with two companions; Leonard Hakizimana and a man identified as Fabrice.

Though accounts of what happened next conflicted at trial, it is undisputed that Appellant and his companions became embroiled in an altercation with several of the Doerue siblings, including Chris Doerue. The confrontation moved into the front yard and street. Hakizimana produced a firearm he had been carrying "just in case things escalated," and dropped it. Appellant picked it up and fired a single round. The bullet entered the back of Chris Doerue's neck below and behind the ear, severed the base of his skull and jugular vein, and exited beneath his left eye. Chris died from his injuries. Appellant, Hakizimana, and Fabrice fled by vehicle, then returned a short time later and surrendered to responding officers.

Appellant testified in his own defense. He acknowledged that he picked up the firearm on purpose, aimed it on purpose "out of fear," and pulled the trigger on purpose "out of fear." His eyes, he said, were closed at the moment of the shot, and he did not

2

know precisely where he was aiming. On cross-examination, he agreed that no one had hit, kicked, or brandished a weapon at him or his companions, and that no threat of lethal force had been made against him.

During the charge conference, Appellant requested a lesser-included-offense instruction based on recklessness. The trial court denied the request, observing that Appellant had testified he intentionally pulled the trigger. The charge submitted murder together with instructions on self-defense and defense of a third person.

During guilt-innocence deliberations, the jury sent several notes concerning the evidence. One read: "1 juror does not believe this is murder, believes it is manslaughter. Said she can not [sic] in good conscious [sic] agree to murder[.] She said the prosecutor has not convinced her." With the agreement of both parties, the trial court directed the jurors to continue deliberating. Roughly an hour later, the jury returned a unanimous guilty verdict. On defense request, the jury was polled, and each of the twelve jurors confirmed the verdict.

During punishment deliberations the next day, the jury reported that eleven jurors agreed on a sentence but one juror would not compromise. Without objection, the trial court delivered an "*Allen* charge" to the deadlocked jury.[2] A subsequent note stated that Alternate Juror No. 1, who had been seated as a juror during guilt-innocence to replace

---

[2] *See Allen v. United States*, 164 U.S. 492, 501, 17 S. Ct. 154, 157, 41 L. Ed. 528 (1896). One purpose of such an instruction is to indicate to jurors "that some deference is owed to the opinion of the majority of the other jurors." *Montoya v. State*, 810 S.W.2d 160, 166 (Tex. Crim. App. 1989) (en banc).

an excused juror, wished to speak with the judge. The trial court responded that any communication would occur only in writing through the bailiff.

The jury then sent a longer note. Alternate Juror No. 1 wrote that she had disagreed with the guilty verdict, believed the evidence more nearly fit manslaughter than murder, and had assented to guilt only after "hours of being argued with." She wrote that she began crying, felt "bulleyed" [sic], and had been mocked and insulted by other jurors. She also wrote that one juror "mentioned something yesterday about telling the Doerue family I was the one who prevented his family from receiving justice," and that she remained "scared of that."

Appellant moved for mistrial based on juror misconduct. The trial court denied the motion as to guilt-innocence but granted a mistrial as to punishment based on the jury's inability to agree. A second jury impaneled solely for punishment assessed forty-five years of confinement in prison and a $10,000 fine.

Appellant timely filed a motion for new trial alleging juror misconduct. The motion was supported by an unsworn declaration of trial counsel that recounted the substance of the juror's note. According to the declaration, counsel had spoken with the juror after trial, and she reported that other jurors said words to the effect that "if you don't vote guilty we'll give your name to the Doerue family and let them know you were the one who prevented their son from getting justice." Counsel's declaration also noted that ten or more members of the Doerue family and their close friends were present in the courtroom during trial. The trial court initially set the motion for hearing but by email advised the parties that it was vacating the hearing and would allow the motion to expire as a matter

4

of law.  The motion was overruled by operation of law.  *See* TEX. R. APP. P. 21.8(c).  This appeal followed.

## ANALYSIS

A. Denying the Manslaughter Instruction was not Error.

Appellant argues the trial court erred by refusing to submit an instruction on the lesser-included offense of manslaughter.  He points to a law-enforcement witness's use of the word "reckless" and to his own testimony that he fired the shot with his eyes closed.

Jury-charge review proceeds in two steps: whether error exists, and if so, whether the error was harmful.  *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005).  A trial court's decision to refuse a lesser-included instruction is reviewed for abused discretion.  *Chavez v. State*, 666 S.W.3d 772, 776 (Tex. Crim. App. 2023).  We look first to whether the requested offense is included within the proof necessary to establish the charged offense.  *Id.*  If so, next ask whether the record contains "some evidence" from which a rational juror could find that, if the defendant is guilty, he is guilty only of the lesser offense.  *Id.*; *Cavazos v. State*, 382 S.W.3d 377, 382–83 (Tex. Crim. App. 2012).

Manslaughter is a lesser-included offense of murder that differs only in the culpable mental state: "intent versus recklessness."  *Cavazos*, 382 S.W.3d at 384.  To obtain a manslaughter instruction, then, Appellant needed to point to affirmative evidence that he did not intend or know his conduct would cause death and that he was aware of but consciously disregarded the risk.  *See id.* at 385.  This Court has held that a claim of self-defense, however, is ordinarily "incompatible with a claim of recklessness" because "one

5

cannot simultaneously act intentionally and recklessly . . . ." *Guerra v. State*, No. 07-21-00305-CR, 2022 Tex. App. LEXIS 8828, at *6 (Tex. App.—Amarillo Dec. 1, 2022, no pet.) (mem. op., not designated for publication). The Court of Criminal Appeals agrees: "A fact-finder [] cannot find that a defendant acted recklessly and in self-defense." *Alonzo v. State*, 353 S.W.3d 778, 782 (Tex. Crim. App. 2011). *See also Nevarez v. State*, 270 S.W.3d 691, 695 (Tex. App.—Amarillo 2008, no pet.) (collecting cases).

In this case, Appellant pursued self-defense and defense-of-third-person theories, both of which required him to admit to having committed intentional conduct. A narrow recklessness exception exists for evidence raising accidental discharge,[3] but the facts in this case do not suggest that the firearm discharged accidentally. To the contrary, Appellant confirmed on cross-examination that he picked up the gun on purpose, aimed it on purpose, and pulled the trigger on purpose. On redirect, he reiterated that he "picked the gun up from the floor and [] just shoot" because he was in fear for his life. Appellant also agreed with the prosecutor that he shot at the victim "to stop him from running at [him.]" That his eyes may have been closed at the instant of firing does not convert a purposeful trigger-pull into a reckless act. *See Guerra*, 2022 Tex. App. LEXIS 8828, at *5–6 (testimony that the appellant "just lifted the gun and shot" did not warrant a manslaughter instruction where he acknowledged pulling the trigger intentionally).

The arresting officer's characterization of Appellant's conduct as "reckless" does not supply the missing evidentiary predicate. The officer did not observe the shooting, and his colloquial use of a legal term during the investigation is not affirmative evidence

---

[3] *See Nevarez*, 270 S.W.3d at 695.

6

of Appellant's subjective mental state at the moment of the shot. *See Cavazos*, 382 S.W.3d at 385. Appellant testified his actions were intentional.[4] The record therefore does not contain the affirmative evidence necessary to entitle Appellant to a manslaughter instruction. *See Alonzo*, 353 S.W.3d at 782; *Nevarez*, 270 S.W.3d at 694-95. Finding no error, it is unnecessary to assess harm. We overrule Appellant's first issue.

## B. Neither the Denied Mistrial nor the Motion for New Trial's Expiration Constituted an Abuse of Discretion.

Appellant next contends the trial court abused its discretion by refusing to grant a mistrial as to guilt-innocence and by allowing his motion for new trial to be overruled by operation of law. Because both rulings rest on the same evidentiary predicate, the recantation and misconduct allegations of Alternate Juror No. 1, we address them together.

Rulings on a motion for mistrial and a motion for new trial are each reviewed for abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We will not substitute our judgment for the trial court's; rather we determine whether the decision was arbitrary or unreasonable. *Id.* "Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling." *Id.* A mistrial is a remedy reserved for "extreme circumstances"

---

[4] The jury note reflecting one juror's view that the case fit manslaughter rather than murder does not alter this analysis. Whether a lesser-included instruction is warranted turns on the evidence presented at trial, not on the subsequent views of an individual juror. *See* TEX. CODE CRIM. PROC. art. 36.14 (trial court must charge the jury on "the law applicable to the case").

involving "highly prejudicial and incurable" error. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009).

Texas Rule of Appellate Procedure 21.3(g) requires a new trial "when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial." Allegations of jury misconduct, however, are constrained by Texas Rule of Evidence 606(b). Rule 606(b)(1) provides that, during an inquiry into the validity of a verdict, a juror may not testify about any statement made or incident that occurred during deliberations, the effect of anything on any juror's vote, or any juror's mental processes concerning the verdict. Nor may the trial court receive a juror's affidavit or evidence of a juror's statement on those matters. *Id.* The rule yields only for evidence bearing on whether an outside influence was improperly brought to bear on any juror, or to rebut a claim that the juror was not qualified to serve. TEX. R. EVID. 606(b)(2).

An "outside influence" is something outside both the jury room and the juror. *McQuarrie v. State*, 380 S.W.3d 145, 151 (Tex. Crim. App. 2012). Pressure between jurors, whether by coercion, insults, mockery, or threats, does not qualify. *Colyer v. State*, 428 S.W.3d 117, 125 (Tex. Crim. App. 2014); *see also Romero v. State*, 396 S.W.3d 136, 151–52 & n.16 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). The rule serves several policy interests: candid deliberation, protection of jurors from post-verdict harassment, verdict finality, and prevention of tampering. Admitting evidence of internal pressure during deliberations would undermine these interests. *Colyer*, 428 S.W.3d at 123–24.

The record here presents nothing more than an internal dispute among jurors during deliberations. Alternate Juror No. 1's note describes events inside the jury room,

8

not an influence from outside the panel.[5]  She disagreed with the majority; she alleged she was argued with for hours, mocked, insulted, and that she cried but ultimately assented to a verdict she later attempted to recant.  She later confirmed her vote when Appellant's trial counsel asked to poll the jury.  Counsel's declaration does nothing but attempt to add a second-hand recitation of the same dispute, together with the observation that Doerue family members and friends were present in the courtroom during trial.  These matters fall squarely within Rule 606(b)'s prohibition.  *See Colyer*, 428 S.W.3d at 125; *State v. Gallien*, 631 S.W.3d 885, 896 (Tex. App.—Houston [1st Dist.] 2021, pet. ref'd).

Appellant also suggested that the proximity to Chris Doerue's family and friends in the public courtroom constituted an improper influence, but that argument fares no better.  Public criminal trials are guaranteed by both the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution; the public's right to attend belongs to spectators as well as to the accused.  *See Presley v. Georgia*, 558 U.S. 209, 212 (2010); *Williams v. State*, 664 S.W.3d 266, 273 n.7 (Tex. Crim. App. 2022) (describing public trial rights in Article I, Section 10 of Texas Constitution as "nearly identical" to its federal counterpart).  Nothing in the record suggests the decedent's family or friends did anything other than observe the proceedings.  Counsel's declaration does not allege that

---

[5] Appellant argues that the alleged threat to expose Alternate Juror No. 1's identity to the Doerue family constitutes an outside influence.  It does not.  The alleged threat originated with a fellow juror, and the record contains no indication that anyone outside the jury room encouraged, participated in, or was even aware of it.  The Court of Criminal Appeals has been explicit that coercion by a fellow juror, however unpleasant, is not an outside influence under Rule 606(b).  *See Colyer*, 428 S.W.3d at 125.  Federal courts applying analogous language have reached the same conclusion on similar facts.  *See United States v. Brito*, 136 F.3d 397, 413–14 (5th Cir. 1998) (holding that alleged threats and insults by fellow jurors do not amount to improper outside influence).

any spectator communicated with a juror, threatened a juror, attempted to identify a holdout juror, or otherwise brought pressure to bear. The peaceful attendance of a victim's family at a public trial is not an improper outside influence.

Admittedly, when taken on its face the record reflects an unpleasant deliberative environment. But Rule 606(b) reflects a policy choice that protects the deliberative process itself, even when jurors feel a variety of internal pressures. Absent admissible evidence of an outside influence, Appellant cannot establish jury misconduct sufficient to warrant either a mistrial or a new trial. *See* TEX. R. EVID. 606(b). The trial court's ruling denying a mistrial as to guilt-innocence and permitting a punishment-only retrial, *see* TEX. R. APP. P. 21.9(c), was within the zone of reasonable disagreement, as was its subsequent decision to allow the motion for new trial to be overruled by operation of law. *Ocon*, 284 S.W.3d at 884. We overrule Appellant's second and third issues.

## C. A Hearing on the Motion for New Trial was not Required.

Finally, we consider Appellant's argument that even if the motion for new trial was properly denied, the trial court abused its discretion by declining to hold a hearing on it.

A defendant is entitled to a hearing on a motion for new trial when the motion and any supporting affidavits (1) raise matters not determinable from the record, and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *See Smith v. State*, 286 S.W.3d 333, 338–39 (Tex. Crim. App. 2009). The motion need not establish a prima facie case, but it must raise reasonable grounds. *Smith*, 286 S.W.3d at 339. A trial court need not hold a hearing when the matters alleged, even if true, would not entitle the defendant to relief. *Rhinehardt v. State*, No. 08-01-

10

00335-CR, 2003 Tex. App. LEXIS, at *7–8 (Tex. App.—El Paso July 17, 2003, no pet.) (mem. op., not designated for publication) (affirming refusal to hold hearing where affidavits supporting jury misconduct addressed only internal deliberations). Review is for abuse of discretion. *Smith*, 286 S.W.3d at 339.

As discussed above, the sole factual predicate for Appellant's motion was the substance of Alternate Juror No. 1's post-verdict statements about the internal deliberations of the jury. Even accepting each assertion in counsel's declaration as true, none of it would have been admissible at a hearing to establish jury misconduct. *See* TEX. R. EVID. 606(b); *Colyer*, 428 S.W.3d at 125; *Gallien*, 631 S.W.3d at 896. The only additional fact alleged is that members of the Doerue family and their close friends were present in the courtroom during trial. As noted above, absent evidence of any communication, intimidation, or other conduct directed toward the jury, their mere presence fails to establish an improper outside influence.

Because Rule 606(b) forecloses admission of the evidence Appellant would have offered on the sole ground raised, a hearing was unnecessary. *See Smith*, 286 S.W.3d at 338 ("[A] hearing is not required when the matters raised in the motion for new trial are subject to being determined from the record."); *Rhinehardt*, 2003 Tex. App. LEXIS, at *7–8. The trial court did not abuse its discretion by allowing the motion to expire by operation of law without a hearing. We overrule Appellant's fourth issue.

## CONCLUSION

Having overruled each of Appellant's four issues, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice

Do not publish.